IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DEMETRIA LUCKEY ALDRIDGE, WAKEYA S. LUCKEY, and ALANA S. LUCKEY,<br><br>*Plaintiffs*<br><br>vs.<br><br>D. COURTNEY CONSTRUCTION, INC., and JOHNNY RUIZ,<br><br>*Defendants* | Civil Action No. 2:21-cv-300-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**INTERVENOR PLAINTIFFS' ORIGINAL COMPLAINT IN INTERVENTION**

Intervenor Plaintiffs Rafael Ramirez Castillo, Maria Santos Almanza Castillo, and Alma Espindola, individually and as next friend of R.R. and C.R., (collectively, "Intervenor Plaintiffs") file this original complaint in intervention against T. Cook Trucking, LLC ("Defendant" or "T. Cook") to recover damages for the wrongful death of decedent Rafael Ramirez and in support thereof would respectfully show the Court as follows:

**PARTIES**

1. Plaintiff Rafael Ramirez Castillo is a resident and citizen of Mexico.

2. Plaintiff Maria Santos Almanza Castillo is a resident and citizen of Mexico.

3. Plaintiff Alma Espindola is a lawfully admitted permanent resident of the State of Texas and a citizen of Mexico.

4. R.R. is a minor and a citizen of the State of Texas. Plaintiff Alma Espindola is the biological mother and legal guardian of R.R.

5. C.R. is a minor and a citizen of the State of Texas. Plaintiff Alma Espindola is the biological mother and legal guardian of C.R.

6. Defendant T. Cook Trucking, LLC is a foreign, member managed limited liability company. Defendant T. Cook Trucking maintains its principal place of business at 336 Aubrey Fergerson Rd., Gadsden, Tennessee 38337, and T. Cook Trucking's sole member is an individual who is a resident and citizen of Tennessee.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), in that there exists complete diversity of citizenship between Intervenor Plaintiffs and Defendant, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Texas. Venue is also proper in the Eastern District of Texas because this Court possesses jurisdiction over the subject matter of this controversy.

## FACTS

9. Elpidio Rafael Ramirez Almanza ("Rafael") was a 27-year old son, husband, and father of four. The son of Plaintiffs Rafael Ramirez Castillo and Maria Santos Almanza Castillo ("Parents"), Rafael was born in Mexico. He came to the United States in 2011, where he settled in Carthage, Texas.

10. Rafael met Plaintiff Alma Espindola ("Alma") approximately 10 years ago. Alma was also born in Mexico and remains a Mexican citizen. She has been a lawful permanent resident of Texas since 1999.

11. Rafael and Alma began dating soon after they met, and they ultimately fell in love and agreed to be married. After about two years of dating, they moved in together. Rafael and Alma consistently represented to others that they were married, referring to one another as "husband" and "wife."

12. Rafael helped Alma raise her two children she had at the time they met. And Rafael and Alma soon had two more children of their own: R.R. and C.R.

13. Rafael and Alma maintained a joint bank account at the East Texas Professional Credit Union. They also jointly filed their taxes as spouses, and jointly obtained car insurance.

14. As a result, Rafael and Alma were informally married as set forth in the Texas Family Code § 2.401. Indeed, on October 22, 2021, an Administrative Law Judge with the Texas Department of Insurance—Division of Workers' Compensation determined that Alma is a proper legal beneficiary of Rafael due to her status as Rafael's spouse.

15. Rafael was employed with D. Courtney Construction Company ("Courtney Construction") as a "pusher" for approximately three to four years.

16. In the early morning hours of January 30, 2021, Rafael was travelling along Highway 79, outside of Carthage, as a passenger in a Ford F-350 pickup truck with other employees of Courtney Construction. An individual named Johnny Ruiz ("Ruiz"), who is employed with Courtney Construction, was driving the Ford F-350 pickup truck.

17. The pickup truck was hauling a Kearney trailer. The trailer had been attached to the pickup truck by Ruiz and/or other Courtney Construction employee(s). Upon information and belief, it was not attached to the pickup truck by Rafael.

18. While the pickup truck and trailer were travelling along Highway 79 on the morning of January 30, the trailer became separated from the pickup truck.

19. After being separated, the trailer came to rest in the roadway, blocking both northbound traffic lanes of Highway 79.

20. The pickup truck subsequently came to a stop, and Rafael and other Courtney Construction employees exited the pickup truck and set to work attempting to reattach the Kearney trailer to the pickup truck in an effort to remove the trailer from its resting position blocking the traffic lanes.

21. One of the Courtney Construction employees who had been travelling in the truck stood south of the Kearney trailer and the pickup truck, in one of the northbound traffic lanes of Highway 79, and attempted to flag down traffic that was travelling northbound along Highway 79. Said employee was standing in the left northbound lane.

22. While said employee was attempting to flag down traffic, Rafael set to work on the Kearney trailer in preparations for attempting to reattach it to the pickup truck.

23. Thereafter, and before 7:00 A.M., a Kenworth semi-truck owned by T. Cook Trucking and driven by Mr. Sylvester Luckey, Jr., was hauling a trailer and travelling northbound on Highway 79 when it came upon the scene of the Courtney Construction employees situated in the roadway attempting to reattach the trailer to their pickup truck.

24. Mr. Luckey was travelling in the left northbound lane, which is the same lane in which the employee directing traffic was standing.

25. Upon approaching the scene, Mr. Luckey observed the employee directing traffic. In response to seeing said employee directing traffic, however, Mr. Luckey did not come to a stop. Instead, he swerved into the right northbound lane.

26. After passing the employee directing traffic, Mr. Luckey came upon the Kearney trailer, which had previously been detached from the pickup truck, situated across both northbound lanes. Rafael was positioned behind the Kearney trailer at the time.

27. After it was too late to avoid hitting the Kearney trailer, Mr. Luckey swerved left. But because he failed to take reasonable, appropriate, and necessary evasive action to avoid a collision, his T. Cook truck struck the trailer. That collision caused the trailer to strike Rafael. The force of the collision was so great, that it propelled both the trailer and Rafael down the road. Rafael was killed on the scene.

28. Mr. Luckey's speed was so great at the time of that collision that the T. Cook truck did not come to a stop after striking the trailer and Rafael. Instead, it was propelled across the double yellow center stripe into the southbound lane, wherein the truck continued heading northbound against the flow of traffic.

29. While continuing to travel northbound in the southbound lane, Mr. Luckey struck another truck head-on before the T. Cook truck rolled over onto its left side and eventually came to a stop. Mr. Luckey was killed in the collision.

30. According to the police report, visibility was poor that morning as Mr. Luckey approached the scene of the Courtney Construction employees.

31. Mr. Luckey was required not to drive at a speed that was greater than is reasonable and prudent under the circumstances then existing. Tex. Transp. Code § 545.351(a). As evidenced by the collision instigated by Mr. Luckey, he failed to do so.

32. Mr. Luckey was required not to drive at a speed greater than is reasonable and prudent under the conditions and having regard for actual and potential hazards then existing. Tex.

5

Transp. Code § 545.351(b)(1).  As evidenced by the collision instigated by Mr. Luckey, he failed to do so.

33. Mr. Luckey was required to operate the T. Cook truck at an appropriate reduced speed if a special hazard existed with regard to traffic, including pedestrians, or weather or highway conditions.  Tex. Transp. Code § 545.351(c)(5).  As evidenced by the collision instigated by Mr. Luckey, he failed to do so.

34. The wreck at issue was reported on by KLTV, which ran a story on January 30, 2021, which was subsequently updated on February 1, 2021.  According to that article, first responders from the Inter Community Volunteer Fire Department appeared on the scene of the wreck at approximately 7:00 A.M.

35. That article also cited to a Facebook post from the Inter Community Volunteer Fire Department page.  The scene of the wreck was so shocking that the Fire Department urged its followers in its post to "pray for our first responders as they have to see all this unfold."  The post went on to state "I assure you this kind of job isn't easy and takes a toll on everyone."

36. Rafael was a family man, and the wreck took an unimaginable toll on Rafael's family members.  His parents, his wife Alma, and their children, R.R. and C.R., have been devastated by the loss of their husband and father.

37. Rafael's Parents have lost Rafael's care, society, consortium, companionship, counsel, and attention, and have suffered significant mental anguish.

38. Alma has lost Rafael's care, society, consortium, companionship, counsel, and attention, and has suffered significant mental anguish.

39. R.R. and C.R. have lost their father's care, society, consortium, companionship, training, advise, and education, and have suffered significant mental anguish.

## CAUSE OF ACTION
### (Wrongful Death Pursuant to Tex. Civ. Prac. & Rem. Code Section 71.001, *et seq.*)

40. Intervenor Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

41. Intervenor Plaintiffs are statutory beneficiaries of Rafael. The Parents are Rafael's biological parents. Alma was informally married to Rafael as set forth in the Texas Family Code § 2.401, which has been confirmed by an Administrative Law Judge. R.R. and C.R. are the biological children of Rafael and Alma.

42. Defendant T. Cook is a "person" as defined § 71.001.

43. Mr. Luckey was acting as T. Cook's agent, servant, contractual employee, statutory employee, ostensible agent, agent by estoppel, and/or representative at the time of the collision.

44. The wrongful acts of Defendant T. Cook and Mr. Luckey caused the death of Rafael. Those wrongful acts include but are not limited to the following acts and omissions:

    (a) driving while distracted;

    (b) driving while fatigued;

    (c) failing to timely apply the brakes;

    (d) failing to stop;

    (e) failing to maintain a proper lookout;

    (f) failing to control speed;

    (g) failing to pay adequate attention;

    (h) failing to use due caution;

    (i) driving truck without regard for the safety and welfare of other persons or property; and

  (j)  operating the truck in a manner inconsistent with what a reasonably prudent person would have done under the same or similar circumstances.

45. Each and all of the above-stated acts and/or omissions constitute wrongful acts, neglect, carelessness, unskillfulness, and/or default. Intervenor Plaintiffs reserve the right to plead additional and/or more specific acts and omissions in the future as additional facts become known.

46. Rafael would have been entitled to bring an action for the injury had he lived.

47. Defendant's acts and/or omissions as described herein proximately cause injuries to Intervenor Plaintiffs, for which Intervenor Plaintiffs seek damages.

## CAUSE OF ACTION
### (Negligence and Gross Negligence)

48. Intervenor Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

49. Defendant had a duty to exercise ordinary care and to operate the truck reasonably and prudently. Defendant also had a duty to exercise the degree of care that a reasonable driver would use to avoid harm to others under circumstances similar to the facts described herein.

50. At the time of the collision Defendant failed to use ordinary care.

51. Mr. Luckey was acting as T. Cook's agent, servant, contractual employee, statutory employee, ostensible agent, agent by estoppel, and/or representative at the time of the collision.

52. Defendant's negligence, carelessness, and/or reckless disregard of duty included, but is not limited to, the following acts and omissions:

  (a)  driving while distracted;

  (b)  driving while fatigued;

  (c)  failing to timely apply the brakes;

  (d)  failing to stop;

  (e)  failing to maintain a proper lookout;

  (f)  failing to control speed;

  (g)  failing to pay adequate attention;

  (h)  failing to use due caution;

  (i)  driving truck without regard for the safety and welfare of other persons or property; and

  (j)  operating the truck in a manner inconsistent with what a reasonably prudent person would have done under the same or similar circumstances.

53. Each and all of the above-stated acts and/or omissions constitute negligence and a conscious indifference to the rights of Intervenor Plaintiffs, who reserve the right to plead additional and/or more specific acts and omissions in the future as additional facts become known.

54. Each and all of the above-stated acts and/or omissions, when viewed objectively from the standpoint of the actor at the time of their occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.  And Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Intervenor Plaintiffs.

55. Defendant's negligent, careless, gross negligent, and/or reckless disregard of its duty proximately cause injuries to Intervenor Plaintiffs, for which Intervenor Plaintiffs seek damages.

## VICARIOUS LIABILITY

56. Intervenor Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

57. Defendant owned the truck involved in this collision.

58. Defendant is a motor carrier under Texas law because it controls, operates, or directs the operation of one or more vehicles that transport persons or cargo.

59. Mr. Luckey was operating it with the permission of Defendant at the time of this collision. Indeed, T. Cook has admitted that Mr. Luckey "was carrying for T. Cook" at the time of the collision.

60. Mr. Luckey was acting as Defendant's agent, servant, contractual employee, statutory employee, ostensible agent, agent by estoppel, and/or representative at the time of the collision. Indeed, T. Cook has admitted that Mr. Luckey "was 1099 worker hired by T. Cook."

61. Mr. Luckey was acting in the scope of his agency relationship with Defendant at the time of this collision. Indeed, T. Cook has admitted that Mr. Luckey "was carrying for T. Cook" at the time of the collision.

62. Mr. Luckey was operating the truck in the furtherance of a mission for the benefit of Defendant and subject to control by Defendant as to the details of the mission at the time of this collision.

## DAMAGES

63. As a direct and proximate result of the wrongful acts, neglect, carelessness, unskillfulness, and/or default, and the negligence and gross negligence, of the Defendant, Intervenor Plaintiffs have suffered damages in the past as well as in the future as a result of the occurrence or injury in question.

64. For Rafael's widow, Alma, these damages include:

   (a) pecuniary loss, including the loss of care, maintenance, support, services, advice, counsel, guidance, and reasonable contributions of pecuniary value;

   (b) loss of her husband's society and companionship, love, affection, comfort, protection, and attention;

   (c) loss of inheritance, gifts, benefits, and other valuable gratuities;

   (d) loss of household services;

   (e) loss of consortium;

   (f) mental anguish; and

   (g) other damages.

65. By reason of the foregoing, Alma has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

66. For Rafael's minor children, R.R. and C.R., these damages include:

   (a) pecuniary loss, including the loss of care, maintenance, support, services, advice, counsel, guidance, and reasonable contributions of pecuniary value;

   (b) loss of their father's society and companionship, love, affection, comfort, protection, and attention;

   (c) loss of inheritance, gifts, benefits, and other valuable gratuities;

   (d) loss of household services;

   (e) loss of consortium;

   (f) mental anguish; and

   (g) other damages.

67. By reason of the foregoing, R.R. and C.R. has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

68. For Rafael's Parents, these damages include:

   (a) loss of their son's society and companionship, love, affection, comfort, protection, and attention;

   (b) loss of inheritance, gifts, benefits, and other valuable gratuities;

  (c) loss of consortium;

  (d) mental anguish; and

  (e) other damages.

69. By reason of the foregoing, Rafael's Parents have been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

70. Intervenor Plaintiffs also seek punitive and exemplary damages resulting from gross negligence of the Defendant.

## JURY DEMAND

71. Intervenor Plaintiffs request a jury trial.

## PRAYER FOR RELIEF

Wherefore, premises considered, Intervenor Plaintiffs pray that upon hearing and trial, that judgment be entered in their favor and against Defendant for compensatory damages, statutory, punitive and exemplary damages, court costs, pre- and post-judgment interest as allowed by law, and for such other and further relief, whether at law or in equity, to which they may show themselves justly entitled.

Dated: December 10, 2021                             Respectfully submitted,

                                                      /s/ J. Travis Underwood
                                                     Harry L. Gillam, Jr.
                                                     Texas Bar No. 07921800
                                                     Melissa R. Smith
                                                     Texas Bar No. 24001351
                                                     J. Travis Underwood
                                                     Texas Bar No. 24102587
                                                     GILLAM & SMITH, L.L.P.
                                                     303 South Washington Avenue
                                                     Marshall, TX 75670
                                                     Telephone:  (903) 934-8450
                                                     Facsimile: (903) 934-9257

                                                     **ATTORNEYS FOR INTERVENOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document *via* the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 10th day of December, 2021.

                                                  */s/ J. Travis Underwood*
                                                  J. Travis Underwood